In re COHEN.

(District Court, D. Massachusetts. February, 1904.)

1. BANKRUPTCY—TRUSTEES—APPOINTMENT BY REFEREE.

Where, at the first meeting of the creditors of a bankrupt, the referee found it impracticable to pass on the validity of the claims there presented, because the validity of a large number of them was attacked by other creditors, and therefore continued the consideration thereof, it being impossible to select a trustee in the ordinary manner, it was proper for the referee to appoint a trustee of his own selection, as authorized by Bankr. Act July 1, 1898, c. 541, § 44, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438].

2. SAME—PETITION FOR REVIEW—EVIDENCE.

Where, on petition by creditors for review of an order appointing a trustee for a bankrupt, the creditors desire a review of the evidence, they should either have the evidence before the referee taken down stenographically, and by him certified to the judge, or should specifically point out to the referee the testimony which they wish summarized, and should ask him to certify specific findings of fact.

3. SAME—CONTINUANCE.

Where, at the first meeting of creditors of a bankrupt, disputes as to the validity of certain claims arose, the right to continue the hearing of such contests was within the discretion of the referee.

The following is the opinion of Olmstead, Referee:

This was a petition to review the action of the referee in appointing a trustee of said estate. The proceedings were begun by an involuntary petition, and a receiver had been appointed by the honorable judge of the District Court before adjudication under circumstances which had not been, in the opinion of the referee, fully disclosed to the court. Subsequently a petition was filed by certain creditors represented by Mr. Blanchard for the appointment of a co-receiver; alleging grounds which, to the referee, seemed to warrant the immediate appointment of an additional receiver. The facts as developed at the various stages of this proceeding were that the debtor had, prior to the filing of the involuntary petition, absconded, and that soon after meetings of his creditors were held, and a proposition of settlement on the basis of 33 per cent. was made. The liabilities are in the neighborhood of $10,000. The assets of the estate will probably realize about half that sum. The original proposition to pay 33 per cent. was not carried out, and was soon after followed by the involuntary petition. The petitioning creditors were represented by William Charak, Esq., whose brother was an indorser or surety for the debtor in a large sum. Mr. Charak secured the appointment of his brother-in-law, Mr. Reinherz, as receiver. This case is a pretty good illustration of the evil practice, which had become too common, of purchasing the claims of creditors either immediately before or after the filing of bankruptcy petitions. It is the observation of the referee that creditors, upon the announcement of a failure, become panic-stricken, and are often willing to accept sums which may be offered for their claims far below their real value, and this condition of mind is frequently taken advantage of by designing persons. The scheme which seems to have been contemplated by the parties interested in purchasing these claims was to make an offer of 33 per cent., when the estate would probably pay, with careful administration, between 40 and 50 cents on the dollar, and thus secure the purchase of these claims for the benefit and gain of the purchasers. In other words, what was the interested parties' gain became the creditors' loss. The only safe course, under the ample guaranty of the bankrupt law, is for creditors never to sell their claims until after an appraisal has been had by the regular, sworn appraisers of the court. Then the creditors

¶ 2. Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

know what the true value of the estate is, what they may expect, and what is
the true worth of their claims. An appraisal had been made before the adjudi-
cation, but by appraisers suggested by the parties interested in the purchase
of these claims, and such appraisal may not have afforded the same guaranties
of accuracy to the creditors which an appraisal made by entirely disinterested
appraisers would have furnished. When the first offer of 33 per cent. either
fell through or was withdrawn, an involuntary petition was filed, and the
Charaks undertook to purchase the claims of creditors, with a view, as was
stated, of having the petition dismissed. The experience of the referee is to the
effect that creditors, after the filing of a petition, and especially where a prior
offer had been withdrawn, which offer in this case may or may not have been
a bogus one, are generally willing to accept the best offer made them under the
circumstances. The referee is of the opinion, from the testimony introduced at
the first meeting of creditors, that the purpose of Mr. Charak and his brother
in purchasing these claims was to protect themselves on the guaranty made to
the debtor. In other words, there appears in this case to have been an attempt
to manipulate the status of creditors, and to speculate on prospective dividends
—a practice which certainly, after the filing of petitions, it seems to the referee,
should be discouraged. In view of these facts and other facts set forth in the
petition for a co-receiver, the referee was impelled to appoint a co-receiver in
order that a thorough investigation might be made. Accordingly he selected
A. K. Cohen, Esq., a well-known and reputable attorney, to act with Mr. Rein-
herz. Mr. Cohen has faithfully discharged his duty, and conferred with the
referee in the administration of the estate. At the first meeting of creditors,
William Charak, Esq., represented a large number of claims, to which objection
was made by Mr. Blanchard, representing another faction of creditors. On the
one side were the creditors represented by Mr. Blanchard. On the other were
the large number represented by Mr. Charak. Mr. Blanchard called several
witnesses to the stand, who testified that claims represented by them had been
sold to Mr. Charak. The primary purpose of the choice of a trustee is that the
creditors shall have an honest and able representative. After the reference
of a bankruptcy petition, the referee is the magistrate administering the
"estates in his charge." Bankr. Act July 1, 1898, c. 541, § 29c, cl. 3, 30 Stat. 554
[U. S. Comp. St. 1901, p. 3433]. Upon him devolves the principal and a heavy
responsibility in the administration of estates which are conducted "under the
direction of the court." Bankr. Act, § 47a (2), 30 Stat. 557 [U. S. Comp. St. 1901,
p. 3438]. In the proof and allowance of claims the bankruptcy act also
gives the referee a large discretion. Section 57d, 30 Stat. 560 [U. S. Comp.
St. 1901, p. 3443] provides that upon objection the consideration of claims may
be "continued for cause by the court upon its own motion." In view of the ex-
traordinary facts developed in this case, the referee decided that the only
proper course to pursue was to take the administration of this estate into
his own hands, and appoint a trustee of his own choosing. He accordingly
suspended all the claims presented for the trustee to investigate, and ap-
pointed Lee M. Friedman, Esq., a well-known and reputable attorney, as the
trustee, who has since qualified. In order that partiality might not seem to
be shown towards the creditors represented by Mr. Blanchard, the referee
refrained from appointing A. K. Cohen, Esq., as trustee; preferring, under the
extraordinary circumstances of this case, to take a third and entirely inde-
pendent person.

The course pursued by the referee was thus a direct course, but the same
result might have been accomplished by another but more indirect course.
The referee has sometimes refused to approve, as general order 13 authorizes
him to do, the choice of a candidate as not a competent person; and, inasmuch
as these claims were represented by Mr. Charak, whose action in purchasing
claims, either himself or by his brother, did not meet with the approval of
the court, the referee would have been justified in refusing to approve of the
candidate voted for by the creditors represented by Mr. Charak; and, inas-
much as there was no hope of Mr. Blanchard's faction and Mr. Charak agree-
ing on a candidate, the referee, in all probability, would have been called
upon, from the failure of the creditors to make a choice in this contingency,
to appoint a trustee. It seemed, however, to him more advisable, in view of

the peculiar and irregular methods employed in this proceeding, to take the more direct course, as above indicated.

Lee M. Friedman, trustee.

John H. Blanchard, for objecting creditors.

William Charak, for receiver.

LOWELL, District Judge. At the first meeting of creditors, sundry claims were presented for proof, and all those presented by parties now appealing from the decision of the referee were there contested. In view of all these circumstances, more fully set out in his certificate, that officer found it impracticable at that meeting to pass upon the validity of the claims there presented, and continued their consideration. See section 57d, Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]. As it thus became impossible to proceed to the election of a trustee in the ordinary manner, the referee appointed a trustee, as provided in section 44, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]. The circumstances were unusual, and the referee did not deem it expedient to postpone the election until the contested claims had been passed upon, and an adjourned meeting could be had. No injustice was thus done to creditors, for, after the validity of their claims has been established, they can ask the court for the removal of the trustee thus appointed, without allegation or proof of his dishonesty or inefficiency. In disposing of their petition for removal, the court would bear in mind the unusual circumstances of the trustee's original appointment, and would protect the rights which creditors ordinarily possess in choosing a trustee of the bankrupt estate. The referee, indeed, could have continued the administration of the estate by the receivers already appointed, or by other receivers substituted for these, but he deemed it for the best interests of the estate that the title to the bankrupt's property should be vested immediately in a trustee. While administration by a receiver ordinarily accomplishes much the same result as administration by a trustee, yet circumstances may well exist to make the latter desirable. If at the first meeting all claims offered for proof are in dispute, and it is impracticable at that time to settle the dispute, it appears to be within the discretion of the referee to appoint a trustee under section 44. The judgment of the referee is therefore affirmed.

Creditors prayed a recommittal of the certificate in order that the referee might certify additional facts and evidence. If the appellants desire that the judge shall weigh the evidence and determine questions of fact, they should ordinarily procure that the evidence before the referee is taken down stenographically, and by him certified to the judge. If this be deemed inadvisable on account of expense or other reasons, the parties should specifically point out to the referee that testimony which they wish him to summarize in his report, and they should ask him for specific findings of fact on which they may rely at the hearing before the judge. Nothing of the sort was done here, and the appellants are therefore left to depend upon the summary of evidence and the findings of fact contained in the certificate. In order that the appellants should lose nothing substantial by their oversight, the court

has inquired of the referee concerning one additional finding especially desired by the appellants, namely, that certain creditors named were a majority in number and amount of claims presented, and that no evidence was given before the referee attacking the validity or genuineness of their claims. The court is informed by the referee, as sufficiently appears from the certificate, that the validity and genuineness of all these claims was contested before him. If there was a contest, and the referee continued consideration of the claims, it is immaterial that no evidence impeaching their validity was presented at the first meeting. Continuance was within the referee's discretion.