## J. G. BRILL COMPANY *vs.* NORTON AND TAUNTON STREET RAILWAY COMPANY.

Bristol.    October 23, 1905. — November 27, 1905.

Present: KNOWLTON, C. J., LATHROP, LORING, BRALEY, & SHELDON, JJ.

*Corporation.   Bills and Notes.*

An accommodation indorsement of a note by a corporation is *ultra vires* and cannot be enforced by one who takes the note with notice that the indorsement was without consideration.

If a car manufacturer in payment for cars sold and delivered to a street railway contractor takes a note of the contractor indorsed by one of four railway corporations whose roads the contractor is constructing, in the absence of evidence to the contrary, the indorsement will be taken to be an accommodation indorsement and the manufacturer to be chargeable with knowledge of that fact, so that the manufacturer cannot hold the railway company liable as an indorser.

THE following statement of the case is taken from the opinion of the court:

This is an action on two promissory notes indorsed in the name of the defendant corporation by Charles E. Bibber, treasurer.   The defendant corporation is a consolidated corporation made up of four constituent corporations, one of which was the Mansfield and Easton Street Railway Company.   The consolidation was authorized by the railroad commissioners under R. L. c. 112, by an order dated July 20, 1899.   Deeds from each of the four constituent companies to the consolidated company were dated and apparently were delivered on August 1, 1899. Each of these deeds contained this clause: "In consideration of the foregoing conveyances as well as by force of the statute above referred to [namely, Acts of the year 1897, chapter 269,] the grantee hereby assumes and agrees to pay and discharge all the funded and unfunded debts and obligations of, and all lawful claims and demands now outstanding or hereafter at any time arising against the grantor."

An organization meeting of the consolidated company was held on August 1, 1899, and adjourned to August 15, 1899; and it was on the latter day, as we understand the bill of exceptions, that by-laws were adopted providing that the treasurer should issue no notes until they had been approved on the face of the

same by at least two of the executive committee, and that notes otherwise issued should be void.

The notes sued on did not comply with that provision. One of them, for $2,000, was issued on August 14, 1899, the day before that by-law was adopted; the other, for $3,000, on September 16, 1899, a month after it was adopted. Each was made by the Bibber-White Company, payable to the order of " Ourselves," and indorsed first by the Bibber-White Company, and second by the defendant Charles E. Bibber, treasurer.

It appeared that the Bibber-White Company were street railway contractors who had a contract for building the railways of the Mansfield and Easton Street Railway Company and of the three other companies which by consolidation became the defendant corporation; and that four cars were sold to the Bibber-White Company by the plaintiff corporation, which received therefor two notes of that company, each for $3,750, made by the Bibber-White Company payable to the order of " Ourselves " and indorsed first by the Bibber-White Company, and second by the Mansfield and Easton Street Railway Company, E. D. Hewins, treasurer.

These original notes were given in the winter of 1898–1899, and were renewed from time to time by similar notes. The last of these renewal notes for which the $2,000 note here sued on was given was for $2,200, dated June 15, 1899, payable in two months, $200 being paid at its maturity. The last of the renewal notes for which the $3,000 note here sued on was given was for $3,000, dated July 20, 1899, and payable in two months. The difference between $3,750, for which the original notes were given, and the sums of $2,200 and $3,000, had been paid by the Bibber-White Company at the maturity of the original notes for $3,750 each, or of renewals thereof.

Charles E. Bibber, who indorsed the notes sued on in the name of the defendant corporation, was the president of the Bibber-White Company, and general manager of the Mansfield and Easton Street Railway Company.

The plaintiff's treasurer testified that he sold the four cars to the Bibber-White Company and forwarded them on their order, two to one company and the other two to another company. He also testified that the plaintiff got " their note indorsed by

two companies which were specifically called for in the contract," and that his company sold the cars to the Bibber-White Company "understanding that" Charles E. Bibber "was an official of the railway company."

At a meeting of the stockholders of the Mansfield and Easton Street Railway Company held on March 12, 1898, it was voted "that a committee of three be elected, to consist of Franklin Mead, Douglas A. Brooks and George H. Swasey, with full powers to contract for the financing and construction of the road, together with the necessary power and equipment." There was evidence that the members of this committee knew of the indorsement by the treasurer of the Mansfield and Easton Street Railway Company.   This vote was ratified by the directors on March 18, 1898.

There were seven directors of the Mansfield and Easton Street Railway Company, and there was evidence that four of the seven knew of these indorsements.   There was no vote of the directors authorizing them.

There was evidence that of the four cars paid for by the two notes for $3,750 each, two originally were delivered on the order of the Bibber-White Company by the plaintiff to the Mansfield and Easton company, and subsequently were moved over to the tracks of another of the four constituent companies, and that the other two never came to the Mansfield and Easton company.

The plaintiff requested the following rulings:

"1. That upon all the evidence the plaintiff is entitled to recover upon the two notes in suit, together with interest and costs.

"2. That the indorsements upon the notes in suit being given in consideration of the cancellation of prior notes indorsed by a street railway company, the obligations of which the defendant has assumed, were given for a valuable consideration and the indorsements are not accommodation indorsements.

"3. That as the Mansfield and Easton Street Railway Company received the cars for which notes bearing its indorsement were given, said indorsements of the Mansfield and Easton Street Railway Company upon said notes were not accommodation indorsements, but were indorsements for a valuable consideration.

"4. That the treasurer of the Mansfield and Easton Street Railway Company had authority to indorse the notes of which the notes in suit are renewals.

"5. That the treasurer of the Norton and Taunton Street Railway Company had authority to indorse the notes in suit.

"6. That the acts of the treasurer of the Mansfield and Easton Street Railway Company in continuing to give the indorsements of said company upon notes, of which the notes in suit are renewals, was such that the directors of said company could have known of said indorsements, and that the failure of the directors to object thereto amounted to a ratification of the giving of said indorsements upon the part of said directors.

"7. That the treasurer of the Norton and Taunton Street Railway Company had implied authority to indorse the notes in suit.

"8. That the treasurer of the Mansfield and Easton Street Railway Company had implied authority to indorse the notes of which the notes in suit are renewals.

"9. That the treasurer of an electric street railway company in the process of construction has implied authority to indorse notes given for the purchase of cars adapted for street railway purposes and actually used by said street railway company.

"10. That in selling the cars, for which the notes indorsed by the Mansfield and Easton Street Railway Company were given, the plaintiff relied upon the credit of the Mansfield and Easton Street Railway Company in part at least.

"11. That the Norton and Taunton Street Railway Company was a corporation organized on or about August 1, 1899, by the consolidation of the Mansfield and Norton, Mansfield and Easton, Norton and Attleborough and Norton and Taunton Street Railway Companies, and that the treasurer of said Norton Street Railway Company, so organized, had implied authority to indorse notes given in renewal of notes indorsed by any one of said four roads from the consolidation of which it was formed."

These requests were refused, and Holmes, J., before whom the case was tried without a jury, ruled for the defendant, filing with his finding the following:

"In view of the evidence that the terms and conditions under which these cars were originally supplied by the plaintiff to the

maker of the notes were the subject of a written agreement entered into by Brill Company, the Bibber-White Company, and the Mansfield and Easton company, (see Ans. to 12th Int. dep. of C. E. Bibber,) and that such agreement was not put in evidence or notified to be produced, I do not think there is any evidence that the plaintiff was entitled to an indorsement by the Mansfield and Easton company, of the notes of Bibber-White Company for cars sold to the latter; without this evidence all that appears is that Charles E. Bibber, acting for the Bibber-White Company, arranged to purchase for that company certain cars for the purpose of selling them to certain of the four street railway companies; that before or after the plaintiff supplied the cars — and it did not appear whether it was before or after — Bibber with the knowledge and assent of Mead, Brooks and Swasey, got Hewins to indorse as treasurer the Mansfield and Easton's name to the notes which were not payable to the Brill Company but to the order of the Bibber-White Company; that the four cars which the Bibber-White Company had purchased of Brill were at first run on to the tracks of the Mansfield and Easton company, and were after transferred to the tracks of the other companies; and upon the evidence in view of the close connections existing between these four companies and the relation of Charles E. Bibber to them all while he was also the representative of the Bibber-White Company, I cannot find that the four cars were specially assigned to the Mansfield company as its property.

" While the executive committee of Mead, Brooks and Swasey were by the stockholders of the Mansfield and Easton company on March 12, 1898, given 'full powers to contract for the financing and construction of the road together with the necessary power and equipment,' it does not appear that the treasurer had authority to indorse notes, — the by-laws while they undertake quite fully to enumerate his powers do not give him the power either to sign or indorse notes, — and further it does not appear that the committee did anything prior to May 18, 1898. The action of the directors in ratifying or confirming the vote of the stockholders of March 12, added nothing to the powers of the committee, and does not purport to confirm any acts already done, if any there were, of the committee. The by-laws gave

the directors power to elect a finance or executive committee, but the committee so elected had no power to make contracts, only to carry out those that might be made by the directors on March 18, 1898, because the stockholders by an express vote authorized the giving of corporation notes not to exceed $100,000. Assuming that this power to give notes authorized the indorsement of the notes of third persons not payable to the corporation, still the power was not in the treasurer alone but was to be executed both by the treasurer and president and for the purpose of borrowing money.

" The corporation had thus expressly provided for paying for its equipment and had limited the amount to be expended — and there does not seem to have been any necessity to commit the corporation to any such obligation or the indorsement of Bibber-White Company's notes payable to the order of that company. In view of this I do not think the treasurer of the Mansfield and Easton company had any implied power to indorse. It is not necessary perhaps to decide whether the indorsement if authorized would have been an accommodation indorsement though it would seem if the Mansfield and Easton company were to get no cars by it its only purpose would be to help the credit of Bibber-White Company with the Brill Company plaintiff. If it be assumed that a street railway corporation is subject to the same law as trading corporations (*Monument National Bank* v. *Globe Works*, 101 Mass. 57), still there must have been authority from the directors to make the indorsement, and the directors of the Mansfield and Easton company never authorized it. The whole transaction was that of a committee, the directors did not act. Nor do I find that there was any holding out by the repeated transactions of the treasurer in indorsing sufficient evidence to imply any consent on the part of the directors — no funds of the corporation were paid out in the notes. It is true that the four of the seven directors, viz: Brooks, Mead, Swasey and Bibber knew what was going on, but as already stated it was the committee who undertook to act, not the directors. I am therefore of opinion and rule that the indorsement did not bind the Mansfield and Easton company, and was not an obligation of that corporation at the time of consolidation.

" But if this were not so the treasurer of the Norton and

Taunton company, the defendant, had no authority to indorse notes given in renewal of any obligation of the Mansfield and Easton company.  The by-laws of the defendant expressly prohibited it, notes of the defendant could only be issued on the authority of both the president and treasurer, both must sign if the power to indorse notes of third persons was included in this power, still the president never signed this indorsement and the directors never authorized it, nor was there as to the defendant corporation any repeated transactions, the notes in suit were the only ones, there were no renewals.

" Upon the whole evidence I am of opinion and so rule that the plaintiff is not entitled to recover and I refuse all the rulings requested by the plaintiff, they are attached to this memorandum, and find for defendant."   The plaintiff excepted.

*I. McD. Garfield,* for the plaintiff.

*F. S. Hall,* for the defendant.

LORING, J.   [After the foregoing statement of the case.]   It is settled by *Usher* v. *Raymond Skate Co.* 163 Mass. 1, and the cases there cited, that a corporation is not liable on an accommodation indorsement in the hands of one who takes with knowledge of that fact.   Such an indorsement is *ultra vires.* That means that the corporation would not be liable on it even if it had been authorized by all the directors and the majority of the stockholders.   Nevertheless, when a person takes a negotiable note before maturity signed by a corporation in due course of business from one who apparently has received it for a debt due from the corporation, the defence that it is in fact an accommodation note cannot be set up.   Such were the cases relied on by the plaintiff in its argument here.   *Monument National Bank* v. *Globe Works,* 101 Mass. 75.   *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505.   The same is true of *Craft* v. *South Boston Railroad,* 150 Mass. 207, which the plaintiff seeks to distinguish.   There the note was made by the corporation and was made payable to the plaintiff.   But a payee may be a *bona fide* purchaser in due course of a note payable to himself.   *Boston Steel & Iron Co.* v. *Steuer,* 183 Mass. 140.

If the note sued on in such a case is signed by the treasurer and there is no evidence of actual authority, the implied authority of a treasurer to sign notes has to be considered.   But in the

case at bar where by the terms of the note and the fact that it is taken by the plaintiff for a debt due not from one to whom it appears to have been negotiated but from one for whose accommodation it appears to have been indorsed, no such question arises. For it is settled that where a note is taken from the payee, in payment of a debt due from him, indorsed by a third person, the indorsement is *prima facie* an accommodation indorsement, and the person who takes it is chargeable with knowledge that the indorsement is an accommodation indorsement. *National Bank of Commonwealth* v. *Law*, 127 Mass. 72. See also *Harrington* v. *Baker*, 173 Mass. 488.

In the case at bar the plaintiff having taken the original notes for $3,750 each from the Bibber-White Company for a debt due from that company, the indorsement of the Mansfield and Easton Street Railway Company, in the absence of evidence to the contrary, was an accommodation indorsement, and the plaintiff was chargeable with knowledge of that fact. The plaintiff left the case there and did not show, as was shown in *Beacon Trust Co.* v. *Souther*, 183 Mass. 413, that as between the Bibber-White Company and the Mansfield and Easton Railway Company those notes were in fact the obligations of the railway company given for a debt due from it.

The plaintiff has argued that the cancellation of the previous notes is a good consideration even if the indorsements of the Mansfield and Easton company were void. Assuming without deciding that this might be so, if it were shown that the renewal notes were in fact given to secure the cancellation of the previous notes without regard to their validity, the answer here is that no such case was in fact made out, or attempted to be made out, at the trial.

For these reasons none of the rulings requested should have been given.

As there was no evidence on which a finding could be made in favor of the plaintiff, it is not necessary to go further.

*Exceptions overruled.*