In re McLEAN STORE FIXTURES CORPORATION.

ATLANTIC NAT. BANK v. HANFLIG et al.
No. 2879.

Circuit Court of Appeals, First Circuit.
April 6, 1934.

William J. McCluskey, of Boston, Mass. (Barnard Morrison, of Boston, Mass., on the brief), for appellant.

Edward A. Nathanson, of Boston, Mass., for appellee Hanflig.

John A. Daly (of A. J. & J. A. Daly), of Boston, Mass., for appellee Arlington Nat. Bank.

Before WILSON and MORTON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

This action is before this court on an appeal of the Atlantic National Bank from a decree of the District Court for the District of Massachusetts, affirming an order of the referee in bankruptcy disallowing the claim of the appellant in the sum of $15,-000 on a note signed by the bankrupt corporation. Certain preliminary facts were agreed to by counsel as follows:

(1) That the McLean Store Fixtures Corporation was petitioned involuntarily into bankruptcy by William W. Crocker et al. on May 26, 1932;

(2) That the McLean Store Fixtures Corporation was adjudicated a bankrupt on June 8, 1932;

(3) That an order of reference was entered on June 8, 1932;

(4) That a proof of debt was duly filed by the Atlantic National Bank of Boston in the sum of $16,620.08;

(5) That said proof of debt was allowed in the sum of $1,350 and denied in regards to a promissory note in the sum of $15,-000.

From the referee's certificate of review the following facts appear: The bankrupt was a family corporation. All the stock was originally owned by George, Isaac, and William McLean. In January, 1930, Isaac and William McLean went to Arthur P. Stone, vice president of the Atlantic National Bank, and told him that William needed $15,000

to pay off a mortgage on some property which William owned in Cambridge, Mass. Isaac and William McLean made a note for $15,000, payable to the McLean Store Fixtures Corporation; the corporation by its treasurer, George McLean, indorsed this note; the Atlantic National Bank discounted it and turned the money over to William McLean to pay off the mortgage on his own property in Cambridge; Stone knew that the money advanced by the bank on this note was to be used by William for his own benefit, and that none of the proceeds was to go into the treasury of the corporation.

The note was renewed six or eight times in the same form. Finally, in February, 1932, Stone got impatient and said he would have to have the note paid. Isaac and William, makers of the note, said they did not have any money and, after some discussion, Stone agreed to take the note of the corporation payable in thirty days in renewal of the note signed by Isaac and William.

A note of the corporation was made and signed by Isaac McLean, who had become its president and treasurer, payable to Isaac as an individual. The note was indorsed by him and turned over to the bank. No consideration was ever given the corporation for this note and there was no vote of the stockholders or directors authorizing or ratifying the making of the note.

The corporation, now the bankrupt, clearly was an accommodation indorser on the first note. The last-mentioned note was given as a substitute for the earlier renewal note and the only difference resulting from the change of procedure was to make the corporation an accommodation maker instead of an accommodation indorser. No consideration was received by the corporation from the original, renewals, or final note.

The only legal question here involved is whether or not the disallowance of the note by the referee in bankruptcy, affirmed by the District Judge on review, should be sustained.

In 10 Cyc. 1115, it is said: "Judicial authority is nearly unanimous to the effect that a corporation has no power to endorse, to accept, or otherwise to become liable upon commercial paper for the mere accommodation of another person or corporation."

In Cook on Corporations (8th Ed.) vol. 4, § 774, it is said to be a well-established rule that a corporation cannot ordinarily be bound by its signatures to, or indorsement, or guaranty, of the note or paper of another person for the accommodation of the latter.

The directors are authorized by the stockholders to do business for corporate purposes but are not authorized to use the corporation to perform acts of friendship or accommodation to others. The general rule is that the accommodation indorsement, signature, or guaranty of the corporation is illegal and cannot be enforced. The indorsement, however, though not enforceable by parties taking it with notice that it was for accommodation, may be enforced by bona fide holders. Notwithstanding the general rule on this subject, there is no rule of public policy which prohibits an accommodation indorsement of commercial paper by a private corporation. Consequently, if such an indorsement is made with the knowledge and assent of all the directors and stockholders' and creditors' rights are not affected, the indorsement is valid and enforceable.

There are some cases following the text of the author above quoted which seem to hold that a corporation may be liable as an accommodation indorser, provided, however, that the rights of creditors are not thereby injured and the indorsement is made with the knowledge and assent of all the directors and stockholders.

But it cannot be said to be universally so held.

There is some language in the opinion of Judge Lowell in the case of In re Prospect Worsted Mills (D. C.) 126 F. 1011, 1013, indicating that he recognized the same rule, but he says: "On the other hand, an indorsement which ordinarily implies value will not bind a corporation to an indorsee who has knowledge of the facts, provided no value is really given."

It cannot be held that the bank was a holder in due course for value of the original note or any of the renewals. Stone, the vice president of the bank, had notice that the money advanced was to be used by William McLean for his own benefit and that none of the proceeds were to go into the treasury of the corporation.

The transaction was a Massachusetts contract. No Massachusetts case has been cited by counsel, and we have been unable to find any, recognizing the principle that, if all stockholders consented to an accommodation indorsement of a corporate note, the corporation would be bound on its indorsement.

In the case of Boston Box Co. v. Shapiro, 249 Mass. 373, 380, 144 N. E. 233, 235, it appears that one of the issues related to a promissory note given by the corporation to one of the defendants, Joseph Shapiro, and

by him indorsed without consideration to the partnership of which he was a member. Shapiro held the promissory note of one Friedland, the plaintiff's bookkeeper, and had demanded payment on the same. But Friedland, being unable to pay, suggested at a meeting where all the officers and stockholders of the plaintiff corporation and Shapiro were present, that the plaintiff, corporation, issue its note to Shapiro for $500, taking an assignment from Shapiro of the note held by him against Friedland and collecting the amount of the note so issued in small installments from Friedland's salary, who was to continue and did continue in the employment of the corporation. The officers and stockholders having assented, the note was issued to Shapiro. There was no vote of the corporation authorizing or ratifying its issue. It did not appear in the record that Shapiro ever assigned or indorsed the Friedland note to the corporation or surrendered or canceled the note of Friedland.

The court says: "It is plain that the new note was made for the sole accommodation of Friedland, and that neither Shapiro nor the defendants took the note for value. The plaintiff is a business corporation, and the defendant partnership, of which Shapiro was a member, were chargeable with his knowledge that the note was given by the corporation as accommodation paper. It is settled, even if all the officers, directors and stockholders assented to the issuance of the note, that such a note is ultra vires; and cannot be enforced by the defendants who took with notice, that the note was without consideration." Citing J. G. Brill Co. v. Norton & Taunton Street R. R., 189 Mass. 431, 75 N. E. 1090, 2 L. R. A. (N. S.) 525; Johnson v. Johnson Brothers, 108 Me. 272, 80 A. 741, Ann. Cas. 1913A, 1303.

In the case of J. G. Brill Co. v. Norton & Taunton Street R. R., supra, it is held if by the terms of the note and the facts, the note is taken for a debt due, not from one to whom it appears to have been negotiated, but from one for whose accommodation it appears to have been indorsed, it is prima facie an accommodation indorsement and the person who takes it is chargeable that the indorsement is an accommodation indorsement. This case was cited with approval in the case of N. H. National Bank v. Garage and Factory Equipment Company, 267 Mass. 483, 487, 166 N. E. 840, wherein it is held that, if the holder of negotiable paper takes it with knowledge or notice of the fact of such accommodation

indorsement, it is open to such accommodation indorser to set up such knowledge coupled with evidence of the ultra vires nature of the indorsement in defense to an action on the negotiable instrument. Usher v. Raymond Skate Co., 163 Mass. 1, 39 N. E. 416; Pierce, etc., Mfg. Corp. v. Daniel Russell Boiler Works, Inc., 262 Mass. 243, 159 N. E. 625.

These cases appear to settle the law of Massachusetts and we hold that the District Court, in affirming the disallowance of the note by the referee in bankruptcy, committed no error unless it can be held that the note of February, 1932, was given to compromise a doubtful controversy which had arisen between the bank and the bankrupt.

It is apparent that the referee in bankruptcy and District Judge were of the opinion that the facts did not warrant such a conclusion. There is no suggestion in the evidence that a suit was threatened. It seems more probable that when the bank found that the McLeans had no money, it attempted to better its condition by taking the new note of the corporation as maker, indorsed by Isaac.

While it is true that the agreement of a creditor to extend his debtor's time for payment or to forbear suing on the claim may constitute a valuable consideration for a new contract, we hold that the facts disclosed do not, as a matter of law, sustain the appellant's contention in the instant case. Codman v. Dumaine, 249 Mass. 451, 457, 458, 144 N. E. 408; Silver v. Graves, 210 Mass. 26, 95 N. E. 948.

A final decree in the case was entered in the District Court June 20, 1933. The citation on appeal to this court was issued July 18, 1933. On October 2, 1933, the appellant filed a motion in the District Court to have the decree vacated; that a rehearing of the cause be granted; and that it be recommitted to the referee in bankruptcy for the taking of additional testimony. The motion was denied November 3d, and exceptions saved. More than three months had elapsed since the final decree was entered and the case had passed to the Circuit Court of Appeals. If this motion had been seasonably made before citation on appeal had issued, it would have presented no question of law for the determination of this court as there was no proof of an abuse of discretion on the part of the District Court. M'Nutt v. Fidelity & Deposit Co. (C. C. A.) 293 F. 367, 370. But as the citation on ap-

peal had issued, the District Court was without jurisdiction to entertain such a motion. Parker v. New England Oil Corp. (D. C.) 15 F.(2d) 236; Midland Terminal Ry. Co. v. Warinner (C. C. A.) 294 F. 185; Draper v. Davis, 102 U. S. 370, 26 L. Ed. 121; Citizens' Bank of Wichita v. Farwell (C. C. A.) 56 F. 539; Morrin v. Lawler (C. C.) 91 F. 693.

On November 7, 1933, the appellant filed in the District Court a further motion asking to have the record taken before the referee in bankruptcy certified and incorporated in the record on appeal. A copy of the testimony sought to have certified was filed in the clerk's office with the appellant's motion.

It appears that the testimony before the referee in bankruptcy was not taken by an official stenographer but that shorthand notes were taken by one of the attorneys engaged in the hearing. The motion was denied.

A transcript of this testimony was not made a part of the referee's certificate on review and was not properly before the District Court for its consideration.

In the case of In re Cohen (D. C.) 131 F. 391, 393, it was said by Judge Lowell: "Creditors prayed a recommittal of the certificate in order that the referee might certify additional facts and evidence. If the appellants desire that the judge shall weigh the evidence and determine questions of fact, they should ordinarily procure that the evidence before the referee is taken down stenographically, and by him certified to the judge."

In the instant case this was not done and it does not appear that the referee was asked for specific findings of fact on which the appellant would rely at the hearing before the judge. See Brown's Guide, Federal and Bankruptcy Practice, p. 268.

It is too plain for argument that what was sought by the appellant's motion was not a mere correction of the record, but a change in the record certified for review.

Conceding that a District Court may have the power and exercise a discretion to correct and certify errors and omissions in the record after an appeal has been perfected, United States v. Chicago & A. R. Co. (C. C. A.) 250 F. 101, such concession does not extend to a certification of evidence not included in a referee's certificate on review which was not before the District Court until long after a final judgment on review had been entered.

The District Court committed no error in denying both motions of appellant.

The decree of the District Court is affirmed with costs to the appellee.