WILLIAM T. BENNETT *vs.* CORPORATION FINANCE COMPANY, INCORPORATED.

Suffolk.    November 15, 1926. — January 17, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Bills and Notes,* Indorsement for accommodation. *Agency,* Scope of authority, Ratification by principal. *Corporation,* Officers and agents, Charter, Ultra vires. *Evidence,* Relevancy and materiality.

At the trial of an action against a corporation as an indorser of a negotiable promissory note dated in April, 1922, it appeared that the note was indorsed in the name of the corporation by its treasurer and was the third note given in renewal of, and for the amount of a balance due on, a similar note likewise indorsed and given in November, 1920; that about four months before the original note was indorsed, the directors of the defendant had voted that the person who then and at the time the notes were given was treasurer "be, and hereby is, appointed officer of the Corporation to have general charge and direction of its affairs, subject to the direction of the President . . . until further notice." There was evidence that the treasurer, the president and two other directors of the corporation had considered and authorized the giving of the indorsement as part of a transaction in which the corporation received as security a mortgage of the maker of the note and that the treasurer made regular reports to the directors. *Held,* that there was evidence warranting a finding that the indorsement was authorized.
The charter of a corporation authorized it to engage in a general brokerage and financial business and in any business transaction commonly

carried on by capitalists, promoters, financiers, and those engaged in certain other named businesses; to indorse promissory notes and other commercial paper, to assist, financially or otherwise, corporations, individuals and others, and give any guaranty in connection therewith for the payment of money; "to lend money or credit to and to aid in any other manner any person . . . or corporation . . . in which any interest is held by this corporation or in the affairs or prosperity of which this corporation has a lawful interest . . . ."  The corporation indorsed for accommodation an original note and renewal notes given by the maker for the purchase of merchandise, and received mortgages from the maker as security.  *Held,* that such indorsements were not *ultra vires.*

At the trial of an action against a corporation which was an indorser before delivery of a negotiable promissory note, the trial judge erroneously instructed the jury that the indorsement of the defendant was without consideration and therefore was an accommodation indorsement and *ultra vires;* and also instructed them that if the note were received by the payee in good faith for value before maturity, but without knowledge that there was no consideration, that fact would not be a defence.  The jury found for the plaintiff.  The defendant alleged an exception to the refusal by the judge to order a verdict for the defendant on the grounds that the signature of the corporation was unauthorized and that the indorsement was *ultra vires.*  This court, holding that the questions, whether the signature was authorized and whether the indorsement was without consideration, were for the jury, and also holding that the indorsement was not *ultra vires,* further *held,* that the defendant was not harmed by the erroneous instruction by the judge.

At the trial of the action above described, it was *held,* that it was proper to exclude evidence of a vote of the stockholders electing directors in March, 1921, four months after the giving of the original note and over a year before the giving of the note in suit; and of a vote of directors eleven months before the giving of the original note, naming a bank as a depository and authorizing the president and treasurer to open a bank account therein, and providing that checks be signed by the president and countersigned by the treasurer.

CONTRACT upon a promissory note for $1,400 dated April 17, 1922, made by "Backus Foundry Inc." payable to "Witherbee Sherman Co.," indorsed in blank by Frederick E. Backus, by "Corporation Finance Co. Inc. Charles S. Beatty, Treas.," by Charles S. Beatty, by Francis P. Garland, and specially indorsed to the order of the plaintiff by the payee.  Writ in the Municipal Court of the City of Boston dated May 24, 1923.

On removal to the Superior Court, the action was tried before *O'Connell,* J.  Material evidence and exceptions by

the defendant to the exclusion of evidence are described in the opinion. A motion by the defendant that a verdict for it be ordered was denied. There was a verdict for the plaintiff in the sum of $1,652.24. The defendant alleged exceptions.

*G. S. Ryan*, for the defendant.

*J. S. O'Neill*, for the plaintiff.

CROSBY, J. This is an action upon a promissory note for $1,400, dated April 17, 1922, and payable to the order of "Witherbee Sherman Co." Backus Foundry, Inc. is the maker. The note was indorsed by the defendant before delivery, and delivered by the payee to the plaintiff after maturity for collection. In the defendant's answer several defences are pleaded, including payment, want of consideration, *ultra vires* and that the indorsement was not authorized by the defendant.

It is agreed that there was evidence at the trial sufficient to warrant findings that all of the signatures upon the note were genuine; that the note was duly and seasonably presented for payment to the maker and payment refused; that it was protested for nonpayment; that due notice of dishonor by the maker was given to the defendant and the other indorsers; and that the signatures of Backus Foundry, Inc. and Witherbee, Sherman and Company were duly authorized. At the close of the evidence the trial judge denied a motion duly filed by the defendant that a verdict be directed in its favor.

The judge instructed the jury, in substance, that the indorsement of the defendant was without consideration and therefore was an accommodation indorsement and *ultra vires,* but that if the note were received by Witherbee, Sherman and Company in good faith for value before maturity, but without knowledge that there was no consideration, that fact would not be a defence.

The defendant was organized under the laws of Virginia and has a usual place of business in Boston. The purposes for which the corporation was formed are stated in its articles of association; material portions of its charter are recited in the record as follows:

"1. To engage in and carry on a general brokerage and financial business.

"2. To undertake and carry on any business transaction or operation commonly carried on or undertaken by capitalists, promoters, financiers, contractors, merchants, commission men or agents, and in the course of such business to draw, accept, endorse, acquire, sell and deal in every lawful manner whatsoever in all or any negotiable or non-negotiable instruments or securities including bonds, notes and bills of exchange.

"3. To draw, make, accept, endorse, execute, issue, discount and have discounted and to deal in every lawful manner in promissory notes, bills of exchange, trade acceptances, agricultural paper, warehouse and dock receipts, warrants and other negotiable or transferable instruments.

"4. To underwrite, subscribe for, buy, sell, pledge, mortgage, hold and otherwise deal in stocks, bonds, obligations or securities of any private or public corporation, government or municipality, trusts, syndicates, partnerships or individuals and to do any other act or thing permitted by law for the preservation, protection, improvement or enhancement of the value of such shares of stock, bonds, securities or other obligations including the right to vote thereon.

"5. To promote or assist financially or otherwise, corporations, syndicates, partnerships, individuals or associations of all kinds and to give any guaranty in connection therewith for the payment of money or for the performance of any obligation or undertaking. . . .

"8. To lend money or credit to and to aid in any other manner any person, firm, voluntary association, trust, joint-stock company or association, or corporation of which any obligation or in which any interest is held by this corporation or in the affairs or prosperity of which this corporation has a lawful interest, and to do all acts and things designed to protect, preserve, improve, or enhance the value of any such obligation or interest, and to guarantee and mortgage its property to secure the payment of principal, interest, and dividends on any stocks, shares, bonds, notes, or other evidences of interest or indebtedness, and the performance

of any other contract or obligation, of any such person, firm, voluntary association, trust, joint stock company or association, or corporation."

Certain by-laws of the defendant corporation are as follows: "EXECUTIVE COMMITTEE Sec. 24. There may be an executive committee of two or more directors appointed by resolution of a majority of the whole board, who may meet at stated times, or on notice to all by any of their own number, during the intervals between the meetings of the board; they shall advise with and aid the officers of the corporation in all matters concerning its interests and the management of its business, and generally perform such duties and exercise such powers as may be directed or delegated by the board of directors from time to time. The board may delegate to such committee authority to exercise all the powers of the board while the board is not in session. Vacancies in the membership of the committee shall be filled by the board of directors at a regular meeting or at a special meeting called for that purpose." "THE TREASURER Sec. 33. The treasurer shall have the custody of the corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the corporation, and shall deposit all moneys, and other valuable effects in the name and to the credit of the corporation, in such depositories as may be designated by the board of directors."

There was evidence that the note in suit was the last of several renewals; that the original note was for $2,000 and was given in November, 1920; that it had been reduced to $1,400 by three payments of $200 each, made either by the maker or by the defendant.

When the original note was given and when subsequent notes in renewal, including the one in suit, were given and indorsed by the defendant, Francis P. Garland was president and a director of the defendant corporation; one Beatty was its treasurer, and a director; and one Berenson and one Robinson also were directors.

There was evidence that during this time the defendant was doing business with Backus Foundry, Inc., the maker

of the notes, and that the defendant held three mortgages on its property which was situated at Brandon, Vermont; that the foundry of Backus Company, Inc., had been built and the company was ready to conduct its business when the original note was given, except that it needed iron ore necessary to make castings; that it applied to the defendant either for a loan of $2,000 or its indorsement of a note for that amount to Witherbee, Sherman and Company, so that the ore could be obtained; and that after the original note was so indorsed the iron was delivered to the foundry.

Garland testified that before the first note was indorsed by the defendant, he, with Beatty, Berenson, and Robinson, went to Brandon and examined the property of Backus Foundry, Inc.; that they then decided, acting for the defendant, that it should indorse the note, and they authorized the defendant's treasurer to do so; that each time the note became due a demand was made by Witherbee, Sherman and Company for payment or reduction thereof, and that he, Berenson, and Beatty decided that the note should be renewed with a reduction of $200, and that Beatty should indorse it in the name of the defendant; that three payments of $200 each were made which reduced the original note to $1,400.

There was evidence that, during the time Garland was connected with the defendant company, each month at the meeting of the directors Beatty, as treasurer, made a report of the financial standing of the company, which contained a statement of its assets and liabilities, including the notes receivable and those payable; that while Garland was president, Beatty, as treasurer, signed notes on behalf of the corporation from time to time; that it was the custom for him as treasurer to make all the notes on behalf of the defendant. It could have been found that, on July 14, 1920, before any of the notes in question were given and indorsed by the defendant, the following vote was passed by the directors: "VOTED: That Charles S. Beatty be, and hereby is, appointed officer of the Corporation to have general charge and direction of its affairs, subject to the direction of the President, and that for such service he be paid the sum

of twenty-five dollars ($25.00) a week, until further notice."
There was no evidence of a revocation of the authority thus
given previous to the indorsement of the note in suit.
Garland and Beatty severed their connections with the
defendant corporation in May and June, 1922, respectively.

Although there was much evidence to support the con-
tention of the defendant that Beatty was never authorized
by a majority of the directors to indorse the original note
or those given in renewal, and that the books of the corpora-
tion did not show any record of the notes so indorsed, yet,
in view of the vote of the directors above referred to, giving
Beatty "general charge and direction" of the affairs of the
corporation, the testimony of Garland and the other evidence,
it was a question of fact for the jury to determine whether
Beatty had authority to indorse the notes as treasurer on
behalf of the defendant.   Apart from the question whether
Beatty had express authority to indorse the notes, there was
evidence from which it could have been found that such
indorsements were reported to the directors at their meet-
ings and were ratified and confirmed by them.   *Merchants'*
*National Bank of Gardiner* v. *Citizens' Gas Light Co. of*
*Quincy,* 159 Mass. 505.   *Monument National Bank* v.
*Globe Works,* 101 Mass. 57.   *Sears* v. *Corr Manuf. Co.*
242 Mass. 395.   *Irwin* v. *Worcester Paper Box Co.* 246
Mass. 453, 458.

It is the contention of the defendant that the decision in
*Cashin* v. *Corporation Finance Co.* 251 Mass. 60, is against
the plaintiff's recovery in the case at bar.   That was an
action on a promissory note, given by the defendant's treas-
urer in its behalf, in payment for shares of its own stock.
It was held that there was no evidence of any express author-
ity in the by-laws, or by vote of the directors, empowering
the treasurer to sign or deliver the note, or that the directors
authorized its treasurer to purchase the stock, or that the
execution and delivery of the note were authorized or ratified
by the defendant.   The facts which the jury were warranted
in finding in the case at bar clearly distinguish it from that
case.

It is also the contention of the defendant that, even if

Beatty were authorized to indorse these notes as treasurer in the name of and on behalf of the corporation, such indorsements were *ultra vires* the corporation.

It is well settled that an ordinary business corporation is without authority to become surety or guarantor for another corporation or individual. *Davis* v. *Old Colony Railroad,* 131 Mass. 258. It is also settled that a negotiable note indorsed by a corporation for the sole accommodation of another cannot be enforced against the corporation by a holder with notice that the indorsement was without consideration. *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431. *Boston Box Co. Inc.* v. *Shapiro,* 249 Mass. 373.

These well established principles, however, are not decisive of the question whether the indorsement of the defendant in the case at bar is or is not *ultra vires.* That is to be determined by the defendant's charter and the business which it was organized to transact. It was chartered to engage in a general brokerage and financial business and was authorized to engage in any business transaction commonly carried on by capitalists, promoters, financiers, and those engaged in certain other named businesses. It was empowered to indorse promissory notes and other commercial paper, to assist, financially or otherwise, corporations, individuals and others, and give any guaranty in connection therewith for the payment of money; and it was given authority "to lend money or credit to and to aid in any other manner any person . . . or corporation . . . or in which any interest is held by this corporation or in the affairs or prosperity of which this corporation has a lawful interest . . . ."

It could have been found that, as a holder of three mortgages upon the property of Backus Foundry, Inc., the defendant was interested in its affairs and prosperity. The particular business authorized to be conducted by the defendant under its charter and the broad powers under which it was authorized to act empowered it to indorse the original note and those subsequently given in renewal for the accommodation of the maker. It follows that the

defence of *ultra vires* cannot prevail. *Edwards* v. *International Pavement Co.* 227 Mass. 206, 212–214. *Smith* v. *Board of Water Commissioners*, 38 Conn. 208.

In view of the conclusion reached, it is unnecessary to consider or decide whether the indorsements by the defendant were previously authorized by express vote of the directors or whether an executive committee was appointed by the directors under § 24 of the by-laws consisting of Garland, Berenson and Beatty, before the original note was indorsed by the defendant, or whether, if such committee were appointed, it could authorize Beatty as treasurer to indorse the notes on behalf of the corporation.

The ruling of the trial judge that the indorsement was without consideration was erroneous. That question was for the jury to determine upon the evidence. The judge was also in error in instructing the jury in substance that if Witherbee, Sherman and Company knew that the indorsement was merely for the accommodation of the maker and was without consideration, the plaintiff could not recover. As the defendant by its charter could indorse notes for the accommodation of another, the plaintiff could recover even if the payee knew that the defendant's indorsement was solely for the accommodation of Backus Foundry, Inc.. The jury found for the plaintiff; therefore it must be assumed that, in accordance with the instructions, they found that the payee did not have knowledge that the defendant's indorsement was for the benefit and accommodation of the maker. The defendant was an accommodation indorser and received no value therefor, yet it is liable on the note to a holder in due course even if he knew when he took the note that the defendant was only an accommodation party. G. L. c. 107, § 52.

As the charter of the defendant authorized it to indorse notes for the benefit of Backus Foundry, Inc. and thus lend its credit to that company, and as the jury could have found that under the vote of the directors of July 14, 1920, Beatty as treasurer was given general charge and direction of the affairs of the corporation subject to the direction of its president, a further finding was warranted that the payee

of the note in suit was a holder in due course without additional authority from the directors.

The exceptions to the exclusion of evidence so far as argued by the defendant remain to be considered.

The exception to the exclusion of the record of the meeting of the stockholders held on March 24, 1921, and the election of nine directors at that time, cannot be sustained. The authority of Beatty to indorse the note in suit on behalf of the defendant did not depend upon a vote of those directors. It follows that the evidence excluded was immaterial.

The vote of the directors of October 20, 1919, designating a bank as a depository and authorizing the president and treasurer to open a bank account therein, and providing that checks be signed by the president and countersigned by the treasurer, was properly excluded. It had no bearing upon the question whether Beatty had power to indorse the name of the defendant on the note in suit, nor was it relevant upon any other issue involved.

As we perceive no error in the conduct of the trial prejudicial to the rights of the defendant, the entry must be

*Exceptions overruled.*