THE NEW HAMPSHIRE NATIONAL BANK *vs.* GARAGE AND FACTORY EQUIPMENT COMPANY.

Middlesex.   December 11, 1928. — June 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* Holder in due course, Accommodation indorser.  *Corporation,* Officers and agents, Ultra vires.  *Notice.*

The General Court, by the provisions of G. L. c. 107, § 52, that an accommodation party "is liable to a holder in due course notwithstanding such holder at the time of taking the instrument knew him to be

only an accommodation party," did not extend the powers of every corporation to include the making of accommodation indorsements, nor preclude a corporation, which is defendant in an action against it as indorser on a negotiable promissory note, from showing both that it was an accommodation indorser, that the plaintiff had notice of that fact, and that such an indorsement was *ultra vires.*

A corporation with a charter which specifically authorized it to carry on general manufacturing and merchandising business, to buy and sell stocks, shares, bonds or other evidences of indebtedness, to act as agent, broker or factor, to buy, sell and develop land, trade-marks and patent rights, to borrow money and give security therefor and to do all business incidental thereto, and to exercise all powers conferred upon Massachusetts business corporations, but did not expressly enumerate among its powers the making of accommodation paper, has not that power.

CONTRACT against the defendant as an indorser of a negotiable promissory note.   Writ in the First District Court of Eastern Middlesex dated September 3, 1924.

On removal to the Superior Court, the action was tried before *Brown,* J.   Material evidence is stated in the opinion. The judge refused to order a verdict for the plaintiff and ordered a verdict for the defendant.   The plaintiff alleged exceptions.

*O. T. Wagner,* for the plaintiff.

*E. W. Crawford,* for the defendant.

RUGG, C.J.   This is an action against a corporation as indorser waiving demand and notice on a promissory note made by the Kittery Garage Company to the order of the plaintiff and payable at its banking house.   The defendant pleaded in answer, among other defences not now material, a general denial, want of authority of its treasurer to waive demand and notice, that the indorsement was *ultra vires* the corporate power of the defendant, and that the defendant was an accommodation indorser.

The president of the plaintiff testified that the note was given to him on the day of its date, that it was signed by the maker by Neil Burgess as its president and indorsed by the defendant by Neil Burgess as its treasurer, and also indorsed by Neil Burgess personally, and that this all was done at his desk before the note was delivered to him; that he thought the defendant through Burgess made an indorsement on the

note purely voluntarily; that Burgess offered to make the indorsement of the defendant and that the plaintiff did not ask for such indorsement, and that no money was passed when the note was given to the plaintiff, but the amount of the note was placed to the credit of the maker on its account in the plaintiff bank. Neil Burgess testified that he was at the time of making the note president and treasurer of the maker and treasurer of the defendant, and that no request was made on behalf of the plaintiff that the defendant indorse the note. The charter of the defendant was put in evidence, showing that it was authorized to carry on general manufacturing and merchandising business, to buy and sell stocks, shares, bonds or other evidences of indebtedness, to act as agent, broker or factor, to buy, sell and develop land, trademarks and patent rights, to borrow money and give security therefor and to do all business incidental thereto, and to exercise all powers conferred upon Massachusetts business corporations. The making of accommodation indorsements of negotiable instruments was not expressly enumerated among its corporate powers. There was no testimony to indicate that the plaintiff had any knowledge of the provisions of the charter of the defendant. There was no other evidence material to the issues here involved. At the close of the evidence, the judge granted the motion of the defendant to direct a verdict in its favor and denied that of the plaintiff to direct a verdict in its favor. The plaintiff duly excepted.

During the argument at the bar, it was agreed in behalf of both parties to the action that the law of New Hampshire, where the note was made, indorsed and delivered, so far as material to the issues here depending, is the same as that of this Commonwealth. Therefore no reference is made to statutes or decisions of New Hampshire.

There was evidence to support a finding that the plaintiff received the note in complete form for value before maturity. This was sufficient to constitute the plaintiff a holder. Every holder is deemed *prima facie* to be a holder in due course. G. L. c. 107, § 82. The payee of a note may be a holder in due course. G. L. c. 107, § 75. *Liberty Trust Co.* v. *Tilton,*

217 Mass. 462.   The defendant, by placing its signature upon the back of the note before delivery without limiting words, became indorser and liable as such to a holder in due course. G. L. c. 107, §§ 86, 87.   Every person whose signature appears on a negotiable instrument is deemed *prima facie* to have become a party thereto for value.   G. L. c. 107, § 47. The decisions of this court hold that "the treasurer of a manufacturing and trading corporation is clothed by virtue of his office with power to act for the corporation in making, accepting, indorsing, issuing, and negotiating promissory notes and bills of exchange, and that such negotiable paper in the hands of an innocent holder for value, who has taken it without notice of any want of authority on the part of the treasurer, is binding on the corporation, although with reference to the corporation it is accommodation paper. *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282.   *Bates* v. *Keith Iron Co.* 7 Met. 224.   *Fay* v. *Noble,* 12 Cush. 1.   *Lester* v. *Webb,* 1 Allen, 34.   *Lowell Five Cents Savings Bank* v. *Winchester,* 8 Allen, 109.   *Bird* v. *Daggett,* 97 Mass. 494.   *Monument National Bank* v. *Globe Works, ubi supra.* [101 Mass. 57]. *Corcoran* v. *Snow Cattle Co.* 151 Mass. 74.   While it is possible that most, if not all, of the cases in which this rule has been stated as law have some special circumstances from which the treasurer's authority could be inferred, and that the court was influenced in the decisions by the well known fact that in many of the manufacturing corporations of this Commonwealth the treasurer not only has the custody of the money, but is the general financial manager and often the general business manager of the corporation, the rule itself has been frequently and broadly stated in our decisions, and is well known both to the officers of manufacturing and trading corporations and to those of banks and financial institutions.   It could not now be abrogated or unsettled without disturbing commercial transactions." *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505, 507, 508.   Although that decision was rendered before the negotiable instruments act took effect on January 1, 1899, St. 1898, c. 533, § 198, it has been cited many times since and states the law as it is under that statute.   This rule does not

apply in certain exceptional cases where corporations are organized for special purposes, as a college, *Webber* v. *Williams College,* 23 Pick. 302; or a parish, *Packard* v. *First Universalist Society in Quincy,* 10 Met. 427; or a monument association, *Torrey* v. *Dustin Monument Association,* 5 Allen, 327; or a municipality, *Lowell Five Cents Savings Bank* v. *Winchester,* 8 Allen, 109, *Agawam National Bank* v. *South Hadley,* 128 Mass. 503, *Abbott* v. *North Andover,* 145 Mass. 484, *Franklin Savings Bank* v. *Framingham,* 212 Mass. 92, *Franklin Savings Bank* v. *International Trust Co.* 215 Mass. 231; or a savings bank, *Bradlee* v. *Warren Five Cents Savings Bank,* 127 Mass. 107; *Whiddon* v. *Sprague,* 203 Mass. 526; or a coöperative Bank, *Jewett* v. *West Somerville Coöperative Bank,* 173 Mass. 54; or a horse railroad, *Craft* v. *South Boston Railroad,* 150 Mass. 207; or a charitable corporation, *Peoples National Bank* v. *New England Home,* 209 Mass. 48. The case at bar does not fall within any of these recognized exceptions to the general rule that the treasurer of a corporation has power to indorse negotiable paper.

These principles do not reach to the facts in the case at bar, where the defendant became indorser of the note in the presence of and before delivery to the payee. In its essential facts the case at bar is like *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431, 437. In that opinion the principle of *Merchants National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505, was stated in slightly different form and then it was said at pages 437, 438: "If the note sued on in such a case is signed by the treasurer and there is no evidence of actual authority, the implied authority of a treasurer to sign notes has to be considered. But in the case at bar where by the terms of the note and the fact that it is taken by the plaintiff for a debt due not from one to whom it appears to have been negotiated but from one for whose accommodation it appears to have been indorsed, no such question arises. For it is settled that where a note is taken from the payee, in payment of a debt due from him, indorsed by a third person, the indorsement is *prima facie* an accommodation indorsement, and the person who takes it is chargeable with knowledge that the indorsement is an accommodation indorsement.

*National Bank of Commonwealth* v. *Law,* 127 Mass. 72.  See also *Harrington* v. *Baker,* 173 Mass. 488." Although that decision was rendered respecting negotiable instruments made subsequent to the taking effect of the negotiable instruments act, no reference was made in the opinion to that act or to the section now embodied in G. L. c. 107, § 52, to the effect that an accommodation party is liable "to a holder in due course, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party," nevertheless it cannot be presumed that that section was overlooked by the court deciding that case.  Moreover, that decision has been cited to the point in *Boston Box Co. Inc.* v. *Shapiro,* 249 Mass. 373, 380, and in *Bennett* v. *Corporation Finance Co. Inc.* 258 Mass. 306, 313.  See also *Pierce, Butler & Pierce Manuf. Corp.* v. *Daniel Russell Boiler Works, Inc.* 262 Mass. 242.  It follows from G. L. c. 107, § 52, that a corporation cannot interpose the mere defence that it is an accommodation party in bar of an action by a holder in due course.  That was settled under the negotiable instruments act by *Cosmopolitan Trust Co.* v. *S. Vorenberg Co.* 245 Mass. 317, 319.  It was the common law as to a holder without notice.  *Bird* v. *Daggett,* 97 Mass. 494.  *Monument National Bank* v. *Globe Works,* 101 Mass. 57.  See also *Colonial Fur Ranching Co.* v. *First National Bank of Boston,* 227 Mass. 12; *National Investment & Security Co.* v. *Corey,* 222 Mass. 453; *McLaughlin* v. *Paine Furniture Co.* 245 Mass. 377, 382; *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 207, and *Miller* v. *Levitt,* 226 Mass. 330.

The defence of *ultra vires* stands on a different footing. That defence is that the indorsement of a negotiable instrument before delivery by a corporation not otherwise a party to the instrument, for the accommodation of another, is not commonly within the power of an ordinary commercial corporation, and that therefore, if the holder of negotiable paper takes it with knowledge or notice of the fact of such accommodation indorsement, it is open to such accommodation indorser to set up such knowledge coupled with evidence of the *ultra vires* nature of the indorsement in defence to an action on the negotiable instrument.  *Boston Box Co. Inc.* v.

*Shapiro,* 249 Mass. 373, 380.   *Bennett* v. *Corporation Finance Co. Inc.* 258 Mass. 306, 313.   *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431.   See also *Back Bay National Bank* v. *Brickley,* 254 Mass. 261, 267.

Although it is provided by G. L. c. 107, § 52, that an accommodation party "is liable to a holder in due course notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party," this was not designed to change the law as to corporations and their legal powers even when read in conjunction with §§ 82 and 47 already referred to.   The General Court has not thereby extended the powers of every corporation to include the making of accommodation indorsements.   This in substance was decided by *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431.   See *Oppenheim* v. *Simon Reigel Cigar Co.* 90 N. Y. Supp. (Appellate Division) 355.   The circumstances already narrated, under which the note here in suit was made, indorsed and delivered, were sufficient to give notice to the plaintiff that the defendant was an accommodation indorser and that the defence of the *ultra vires* was open to the defendant.

Although the point is rather close, we are of opinion that the corporate powers of the defendant under its charter did not extend to the making of accommodation indorsements. That is an unusual power to exist in a business corporation. Although the charter of the defendant was broad, it did not include this.   The case is distinguishable from *Bennett* v. *Corporation Finance Co., Inc.* 258 Mass. 306, 313, 314, where the corporate powers were much broader.   See *Beacon Trust Co.* v. *Souther,* 183 Mass. 413, 418, and *Edwards* v. *International Pavement Co.* 227 Mass. 206, 213, 214.   It is somewhat analogous to decisions that an ordinary business corporation is without authority to become surety or guarantor for another.   *Davis* v. *Old Colony Railroad,* 131 Mass. 258. *Commercial Casualty Ins. Co.* v. *Daniel Russell Boiler Works, Inc.* 258 Mass. 453, 455.

*Exceptions overruled.*