BOSTON YOUNG MEN'S CHRISTIAN ASSOCIATION *vs.* ROYAL
INDEMNITY COMPANY.

Suffolk.    December 11, 1934. — February 5, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Insurance,* Fidelity.    *Agency,* Scope of authority, Ratification.    *Corporation,* Officers and agents, Charitable.

A national charitable association was accustomed to raise funds in Boston and other cities for carrying on its work throughout the world. The assistant treasurer of a charitable corporation located in Boston and affiliated with the national association opened an account in a bank in the name of the corporation, "World Wide Extension Account," solely for the deposit of funds so raised, which the corporation was not authorized to use in its local work and did not use nor deal with in any way. The existence of the account thereafter was known by the general secretary and the treasurer of the corporation, who were directors of it, but was not known nor authorized by its president or board of directors. *Held,* that the above facts warranted conclusions that the opening of the bank account in the corporation's name was unauthorized and was not ratified subsequently by it.

The bank account above described was not an account of the corporation within the meaning of a provision of a policy of fidelity insurance covering the corporation against loss through dishonesty of its employees, that all its books, accounts and securities should be audited periodically by a specified auditor.

Such policy contained the further provision that no employee of the insured corporation should be authorized to sign checks in its behalf unless they were countersigned by another employee. It appeared, in an action by the insured corporation upon the policy to recover for loss sustained through defalcations by the assistant treasurer, that, under the agreement with the bank whereby such account was opened by him, money might be withdrawn therefrom upon checks signed by him without countersignature; that the account never was audited by the auditor specified in the policy; and that the defalcations were accomplished by the assistant treasurer's depositing funds of the plaintiff in the account and then withdrawing them for his own use upon checks signed by him alone. *Held,* that neither the fact that no such audit of the account was made, nor the fact that the assistant treasurer withdrew the plaintiff's funds therefrom upon checks signed by him without countersignature, constituted a violation of the policy barring the plaintiff from recovery.

CONTRACT.    Writ in the Municipal Court of the City of Boston dated January 31, 1930.

Upon removal to the Superior Court, the action was referred to an auditor and afterwards was heard upon his report as the only evidence by *Dillon,* J., without a jury. The judge found for the plaintiff in the sum of $6,687.50. The defendant alleged exceptions.

*F. P. Garland,* (*J. P. Sullivan* with him,) for the defendant.
*R. G. Dodge,* for the plaintiff.

CROSBY, J. This is an action of contract brought on a policy of fidelity insurance covering defalcations of employees of the plaintiff. The case was referred to an auditor who heard no testimony, the parties having submitted a written statement, a copy of which is appended to the auditor's report and is entitled "Agreed Statement of Facts," in which it was stipulated and agreed that the facts therein stated were true and were all the facts pertinent to the case. The auditor found the facts stated to be true and made a general finding for the defendant.

These facts show that the parties entered into a fidelity insurance contract. The policy covered "such pecuniary loss of money, funds or other personal property (including that for which the Insured is responsible) as the Insured shall sustain by any act or acts of fraud or dishonesty . . ." committed by employees of the plaintiff as described in the policy. The policy among other provisions provides in the "Schedule of Statements": "7. No employee is or will be authorized to endorse checks on Insured's behalf other than for deposit to the credit of Insured, except No exceptions. 8. No employee will be authorized to sign checks on behalf of the Insured unless countersigned by another employee, except   No exceptions. 9. All books, accounts, stocks and securities will be inspected and audited and verified with funds on hand or in bank by American Audit Company, at intervals of Quarterly." During a certain period of time covered by the policy the assistant treasurer of the plaintiff was guilty of defalcations causing a loss to the plaintiff of $23,374.80. These defalcations were effected in the following manner: The "General Board" of the National Young Men's Christian Association of New York for many years had conducted campaigns in

Boston and in other cities to raise funds for its world wide work. After a time these donations were received by a special treasurer who immediately forwarded them to New York. Subsequently, in July, 1922, the then assistant treasurer of the plaintiff opened an account in the Massachusetts Trust Company, later consolidated with The Atlantic National Bank of Boston, solely for the deposit of the donations above referred to. This account was opened in the name of "Boston Y. M. C. A., World Wide Extension Account," but the plaintiff was at no time authorized to use these contributions for its own local work. The account existed with the knowledge of its treasurer and general secretary, but it was neither known to nor authorized by the plaintiff's president or board of directors except that the treasurer and general secretary were members of the board of directors. The account was by agreement with the bank subject to withdrawals by the assistant treasurer or the treasurer, without countersignature. The deposits and withdrawals in this account were entered only in the check books and bank statements of the account. It was never known to the regular accountants of the plaintiff, or to the American Audit Company, and therefore was not audited by the latter as was required by the policy in the case of accounts falling within its provisions. The defaulting employee of the plaintiff, who succeeded to the position of the assistant treasurer who opened the account, made use of the "World Wide Extension Account" to deposit therein funds of the plaintiff which should have been deposited in the plaintiff's regular account. Subsequently he would, by check without countersignature, withdraw amounts from the "World Wide Extension Account," cash the checks, and use the proceeds for his own purposes. Of the $23,374.80 loss suffered by the plaintiff only about $2,725 was lost by means of defalcations unconnected with the "World Wide Extension Account." The defendant does not contend that the plaintiff violated the terms of the policy apart from the dealings with the "World Wide Extension Account."

At the trial there was no evidence except the auditor's report. The defendant excepted to findings and rulings

of the trial judge, which need not be referred to in detail. The findings which were excepted to and are argued are to the effect that the plaintiff had no interest in the "World Wide Extension Account," deposits in which belonged to another corporation; that the account was wrongfully opened in the name of the Boston Young Men's Christian Association, and without the authority of the latter's board of directors; that the plaintiff did not ratify any dealings with the "World Wide Extension Account"; and finally that that account did not come within the terms of the policy so as to require an auditing thereof. The judge found for the plaintiff in the sum of $5,000 as damages, which was the amount of the policy, together with interest from July 10, 1929 — the date demand for payment was made by the plaintiff.

The terms of the policy relative to the auditing of the plaintiff's accounts and to the countersigning of checks signed by employees were natural to the risk assumed by the insurer so that a strict compliance with those conditions by the insured was required to entitle the plaintiff to recover in the present case. *Glidden* v. *United States Fidelity & Guaranty Co.* 198 Mass. 109, 112, 113, and cases cited. It is not disputed that, as to the "World Wide Extension Account," there was no compliance with the terms of the policy. The question presented then is whether that "Account" was an account of the plaintiff within the meaning of the policy. A strict interpretation of the language of the policy is that the accounts which were to be audited were only accounts of the plaintiff. The question on which the parties have joined issue is whether the plaintiff's assistant treasurer, with the knowledge of the treasurer and general secretary, but without the authorization or the knowledge of the board of directors, had authority to open the "World Wide Extension Account" in the name of the Boston Young Men's Christian Association so as to make it an account of the insured within the meaning of the policy.

The plaintiff is a charitable corporation, and its treasurer has only the powers expressly conferred upon him by

the directors. *New Hampshire National Bank* v. *Garage & Factory Equipment Co.* 267 Mass. 483, 487. The powers of a treasurer of a charitable corporation to bind the corporation have been in this Commonwealth more strictly construed than have similar powers with reference to treasurers of manufacturing and trading corporations. *Peoples National Bank* v. *New England Home,* 209 Mass. 48, 50. *New Hampshire National Bank* v. *Garage & Factory Equipment Co.* 267 Mass. 483, 486, 487. The trial judge found that the opening of the account in the plaintiff's name was unauthorized and that the plaintiff did not ratify such act. We are of opinion that these findings were warranted. If it be assumed that the plaintiff was responsible to the "General Board" for the contributions sent to the plaintiff and that if the plaintiff had authorized the opening of the "World Wide Extension Account" there would have been a breach of the policy in the failure to audit that account, still, such acts, not having been authorized, would not render the plaintiff chargeable with such breach even though the loss under the policy was caused by unauthorized acts. *Sanford* v. *Mechanics' Mutual Fire Ins. Co.* 12 Cush. 541, 552, 553. For the same reason the unauthorized acts of the assistant treasurer in drawing checks without countersignature would not constitute a violation of the policy by the plaintiff. The findings of the trial judge indicate that although the plaintiff had knowledge of the "World Wide Extension Account," the plaintiff was unconnected with the handling of that fund. In consideration of the history of the origin of the handling of that fund and the subsequent circumstances the findings and rulings of the judge fail to show error. When the contributions for world wide work originally came to the Boston Young Men's Christian Association they were received by a special treasurer and forwarded by him directly to New York. The plaintiff was not entitled to use these contributions for its own local purposes, nor does it appear that it ever did so, or that it as a corporation ever dealt with the contributions in any way.

The facts tend to show that in the beginning the special

treasurer, and later his successor, controlled the funds apart from any control or direction by the plaintiff. A contract of bailment cannot be imposed on a corporation unless an authorization or contract approved by the board of directors is shown. *First National Bank of Lyons* v. *Ocean National Bank*, 60 N. Y. 278, 293. The plaintiff did not have its accountants audit the "World Wide Extension Account" for its benefit or advantage. The individuals who handled the contributions in doing so acted as agents for the "General Board," and the responsibility therefor, if any, rested upon such individuals, and not upon the plaintiff. Such a relationship may arise by implication from the acts of the parties. See *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106, 113. It therefore follows that the "General Board," having taken no steps to ascertain the identity of its agent in performing a gratuitous service for it, by implication accepted the individuals who in fact performed that service. If there was any loss in the "World Wide Extension Account" the policy would not cover it, since, the fund being handled as it was by individuals acting for the "General Board," the plaintiff would not have been responsible for the acts of those individuals resulting in loss to the fund. The fact alone that the account was opened in the name of the Boston Young Men's Christian Association would not in the absence of authorization by the plaintiff constitute it an account of the plaintiff. The "World Wide Extension Account" was an account of the "General Board" either in its own right or through its agents, and the plaintiff, having no concern with it, was not obligated by the policy to have that account audited, or to supervise the method of drawing against it by individuals acting as agents of the "General Board."

The conclusion of the trial judge that the plaintiff did not violate any of the terms of the policy, violation of which would have prevented recovery in this action, was warranted in law.

It follows that the defendant's exceptions are overruled and judgment is to be entered for the plaintiff in accordance with the findings of the trial judge.

*So ordered.*