BEACON TRUST COMPANY *vs.* WILLIAM J. BARRY.

Suffolk.   January 25, 1927. — July 1, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Bills and Notes,* Holder in due course.

At the trial of an action by a bank, an indorsee, against the maker of a negotiable promissory note, the defendant relied on a defence that the note was procured by the false and fraudulent representations of the payee from whom the defendant received no value, and that the plaintiff was not a holder for value and in good faith.   There was evidence that the payee procured the note from the defendant on the representation that he would use it to procure from the plaintiff certain personal property which the plaintiff held as security for a debt owed it by the payee, and would deliver the property to the defendant as security for payment of the note; that a few days after the date of the note, the payee talked on the telephone with the defendant, saying that the plaintiff would not release its security without real estate security and asked the defendant to furnish such security; that an officer of the plaintiff also talked with the defendant to the same effect; that the defendant said he would consider the matter; later, owing to the burning of an uninsured plant of his, he refused to accede to the request.   It appeared, and was undisputed, that on the day of the date of the note the payee presented it to the plaintiff for discount and the plaintiff took it and advanced to the payee a sum of money beyond that then owed it by the payee.   A verdict for the plaintiff was ordered.   *Held,* that the verdict properly was ordered, there having been ample consideration for the payee's indorsement and no evidence of bad faith on the part of the plaintiff.

CONTRACT upon the promissory note set out in the opinion. Writ dated November 25, 1924.

In the Superior Court, the action was tried before *Qua,* J. Material evidence is stated in the opinion.   At the close of the evidence, the judge ordered a verdict for the plaintiff in the sum of $16,412.50, and reported the action to this court for determination.

*J. E. McConnell,* (*M. H. Sullivan* with him,) for the defendant.

*D. Stoneman,* (*R. Clayton* with him,) for the plaintiff.

BRALEY, J.  This is an action of contract on a promissory note signed by the defendant as maker, the tenor of which in so far as material is as follows:

"$15,000.00.                     Boston, May 23, 1924.

Six months after date I promise to pay to the order of Thomas F. Curley . . . Fifteen Thousand and / 100 . . . Dollars.  At the Beacon Trust Company, Boston, Mass. Value received. . . .

William J. Barry,
Address: 431 Ashland Street,
Roslindale."

It was indorsed "Thomas F. Curley, 40 Court St."

The trial judge at the close of the evidence ordered a verdict for the plaintiff, and at the request of the defendant reported the case.  If the ruling was right, judgment is to be entered for the amount of the note with interest from its date.  If it was wrong, the case is to stand for trial.

The burden of proof was on the plaintiff throughout the trial to show that it was a holder in due course.  But, the defendant not having denied his signature, the note was *prima facie* sufficient to support the action.  G. L. c. 107, §§ 74, 82. *Merchants National Bank* v. *Marden, Orth & Hastings Co.* 234 Mass. 161, 169.  The answer however avers that the note was procured by the false and fraudulent representations of the payee from whom the defendant received no value, and that the plaintiff was not a holder for value and in good faith.

It could be found on the evidence introduced by the defendant that the defendant was induced to give the note on the promise and assurance of Curley that he would obtain from the plaintiff certain securities, and deliver them to the defendant to secure its payment.  These securities consisted of a lease, and bill of sale of machinery held by the plaintiff as collateral security for money lent to the Murray Engineering Company of which Curley was treasurer.  The evidence tended to show and the jury could find that the defendant was told by Curley, that the plaintiff was pressing him

for payment, although the collateral was more than sufficient to meet the indebtedness, and that the lease could be sold for $15,000, and the machinery for $2,800. The note on the day of its date was taken by Curley to the banking house of the plaintiff and given to one Pierce, a vice-president of the company. A few days later Curley telephoned the defendant from the plaintiff's bank, that it would not release the securities for an unsecured note, nor would it take the note in suit unless the note was secured by real property, and requested the defendant to furnish such security. Pierce then talked with the defendant, and, after stating his official position, said, that the bank would not release the securities for an unsecured note, and asked the defendant if he had any real estate. The defendant replied that he owned some real estate but his credit would be affected if it were mortgaged. It was then suggested by Pierce that the defendant give the company a deed which should not be recorded. The defendant said it was a new proposition which he would consider. But a few days later fire destroyed the buildings on his property, which were uninsured. On June 6, Pierce again called the defendant by telephone and asked if he had come to any conclusion and inquired why he had not brought in a deed of his property. The defendant said that his plant had been totally destroyed by fire and that he would see him June 9. But on June 7, he wrote the plaintiff in substance, that it would be impossible for him to keep the appointment, and that, "The only reason I was going to your bank was to notify you and also Mr. Curley that owing to the burning of my plant it will be impossible now to finance him, as it will take my best efforts to finance my own rebuilding." The defendant, who never had been at the bank, had no further communications with it, and at several interviews after June 7 Curley promised to return the note. Nor did the defendant know that the bank was the holder until he received notice a week before it became due, which he mailed to Curley.

If Curley had retained the note he could not at maturity have maintained an action against Barry. G. L. c. 107, § 52. See *Fillebrown* v. *Hayward*, 190 Mass. 472. *Goodman*

v. *Gaull*, 244 Mass. 528. But under G. L. c. 107, § 52, the defendant is liable to a holder in due course, notwithstanding such holder at the time of taking the instrument knew the maker to be an accommodation party. The question for decision, therefore, is, whether the plaintiff took the note for value. The uncontroverted evidence of Pierce, which was rightly admitted, showed that when the note was received, he handed it to the paying teller to hold for the benefit of the bank. A card which the witness said was a transcript of the account of Curley with the bank, was put in evidence. It appeared from the transcript, and the witness testified that the amount of the note was not actually credited to Curley's account until August 16, 1924. But it was undisputed that Curley on May 23, 1924, when he indorsed and presented the note for discount, was indebted to the plaintiff either as maker or indorser of commercial paper for a much larger amount, and that on the same day, and on the following day the plaintiff on the strength of the security and acting in the ordinary course of business advanced to Curley funds sufficient to meet certain pay rolls becoming due to the employees of the Murray Engineering Company. It is manifest, that the note was accepted as security for advancements which were actually made to Curley, and there was ample consideration for the indorsement. G. L. c. 107, § 48. *Cosmopolitan Trust Co.* v. *S. Vorenberg Co.* 245 Mass. 317.

The defendant's contention that the case should have been submitted to the jury fails, and judgment is to be entered for the plaintiff in accordance with the terms of the report.

*So ordered.*