G. WAYNE GIBBS *vs.* THE LIDO OF WORCESTER, INC. & others.

Worcester. September 28, 1954. — April 1, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Bills and Notes,* Accommodation. *Pleading, Civil,* Special demand, Admission of facts.

In an action against a corporation upon a promissory note purporting to have been made by it and to have been signed on its behalf by a certain person as its treasurer, the defence that that person was not its treasurer authorized to sign the note was not open in the absence of a specific denial and demand for proof respecting the signature as required by G. L. (Ter. Ed.) c. 231, § 29. [430]

It was error to direct a verdict for the plaintiff at the trial of an action against a corporation on a negotiable promissory note made by it and payable to the plaintiff where the evidence taken most favorably to the defendant disclosed that the note was given to the plaintiff as part of a transaction in which two persons purchased all the stock of the corporation, that if any money was advanced by the plaintiff it was to be used by the purchasers to pay part of their purchase price, and the defendant received no value and was an accommodation maker of the note under G. L. (Ter. Ed.) c. 107, § 52, and that there was a question remaining for the jury whether the defendant gave the note for the accommodation of the plaintiff or for the accommodation of the purchasers. [431]

CONTRACT. Writ in the Central District Court of Worcester dated October 6, 1949.

Upon transfer to the Superior Court, the action was tried before *Donnelly*, J.

In this court the case was submitted on briefs.

*Clarence E. Tupper*, for the defendant The Lido of Worcester, Inc.

*Francis T. Mullin*, for the plaintiff.

COUNIHAN, J.    This is an action which ultimately resolved itself into a claim upon a promissory note[1] given by The Lido of Worcester, Inc., hereinafter called Lido, to the plaintiff.    It was originally brought in the Central District Court of Worcester against Lido.    In that court motions were apparently allowed joining William H. Campbell and James C. Flanagan, Junior, as defendants and amending the declaration so as to include them.    On motion a judge of the Superior Court transferred this case to the Superior Court to be tried with *Campbell* v. *Shea, ante,* 422.    G. L. (Ter. Ed.) c. 223, § 2B, inserted by St. 1943, c. 369, § 1, as amended.    The amended declaration is in four counts: (1) against Lido for money furnished it by the plaintiff; (2) against Lido on the promissory note above referred to; (3) against the individual defendants for money furnished them by the plaintiff; and (4) against the individual defendants for money had and received.    The answer of Lido was a general denial; payment; that the note sued upon was not given for valid consideration; that Lido was an accommodation maker and that the plaintiff was not a

---

[1] "$10,000                                                    August 9, 1946

For value received    The Lido of Worcester, Inc. promise to pay to
G. Wayne Gibbs                                    or order
ten thousand and no/100  .  .  .  .  .  .  .  .  .  .  .  .  .  . dollars
Payable in 12 equal monthly installments of $833.33 on the principal commencing January 1, 1947 with interest at 6% commencing September 1, 1946 being payable commencing January 1, 1947 together with the principal installments set forth above, with the right to anticipate any and all payments.

at the rate of six percentum per annum, during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid.

THE LIDO OF WORCESTER, INC.
By: William H. Campbell
Treas.
Signed in presence of:
s/J."

holder in due course; that the act of Lido in giving said note was ultra vires; and misrepresentation by the plaintiff and others.  No answer of the individual defendants appears in the record.

At the close of the evidence the judge directed a verdict for the plaintiff in his action against Lido.  The judge did not specify upon which count of the declaration the verdict should be returned but the parties have agreed that it was on count 2 and that count 1 is waived.  At the same time the judge directed verdicts for the individual defendants on counts 3 and 4.  The case comes here upon the exceptions of Lido to the order of the judge directing a verdict for the plaintiff against it and to the denial of the motion of Lido for a directed verdict for it.  No exceptions were taken to the order of the judge directing verdicts for the individual defendants.  The only matter before us then is the action of the judge in respect to the promissory note.  We are of opinion that the judge erred in directing a verdict for the plaintiff against Lido.

The general rule is that a "verdict will not be directed for a party unless the evidence when construed most favorably to the opposite party would not warrant a contrary verdict, or unless evidence by which such opposite party is bound would make impossible a verdict in his favor." *Reardon Importing Co.* v. *Security Trust Co.* 318 Mass. 304, 307.

We summarize the evidence in its aspects most favorable to Lido.  The individual defendants, Campbell and Flanagan, sometime prior to the delivery of the note had entered into an agreement with one Raymond E. Shea, who owned all of the capital stock of Lido, to purchase that stock for $60,000.  They gave Shea a deposit of $5,000 when this agreement was made.  Lido operated a restaurant with an all alcoholic liquor license in Worcester.  It developed that Campbell and Flanagan were unable to raise more than $20,000 cash including the deposit, and Campbell asked Shea to take back a chattel mortgage for the balance of the purchase price.  Shea declined to do this but told him that

possibly he could arrange financing for him. He said, "I'll have you meet an associate of mine." He called the plaintiff who came to the place of business of Lido where he met Campbell. As a result the plaintiff, Shea, and Campbell went later to Boston to the office of Kane Discount Company. Arrangements were made then or later whereby Kane Discount Company agreed to lend Campbell and Flanagan $30,000. The purchasers were still $10,000 short of meeting the purchase price. After further talks with Shea he told them that the plaintiff would lend them $10,000 on a note so that the purchase could be consummated. Subsequently, on August 9, 1946, they all met at the office of Shea's lawyer in Worcester for the purpose of closing the purchase of the Lido stock. It does not appear when Shea delivered the stock to the purchasers but at some time Shea received a check for $30,000, the proceeds of the loan from Kane Discount Company, and a check for $15,000 from Campbell. At the same time the plaintiff received the note in suit which appears earlier in the margin. About the same time he turned over to Campbell his personal check for $10,000 payable to Lido. Campbell indorsed this check to Shea who indorsed it and turned it back to the plaintiff in payment of part of a loan which he claimed he owed the plaintiff. This check was never cashed nor deposited but was destroyed by the plaintiff later on the same day. The plaintiff testified that Shea owed him $15,000 at that time and that Shea subsequently paid him $10,000 on this debt. The plaintiff had an account in the Millbury National Bank on which the check for $10,000 was drawn but he had no idea of his balance in that bank when this check was drawn. The plaintiff knew that he was to receive the note in suit as part of this transaction. The net result of the transaction was that the plaintiff wound up with the defendant's note for $10,000 and that the check he purportedly gave was cancelled and destroyed.

Lido argues that there was no evidence as to who was its treasurer when this note was given, and that no one could have been elected as such in the time which elapsed between

the delivery of the stock by Shea and the delivery of this note. At first blush, in the absence of any evidence of the authority of Campbell to sign as treasurer of Lido, this might appear to be a good defence to an action against Lido on this note by the plaintiff, who was cognizant of all the circumstances attending the delivery of the stock and the note.

But this question is governed by *Auburn State Bank* v. *National Laundry Co.* 289 Mass. 397, where this court said at pages 398–399: "The pleadings did not put in issue the genuineness of the signature of the defendant as maker of the note or the authority of Harry Rosenfield to sign the note for the defendant. G. L. (Ter. Ed.) c. 231, § 29, provides that a 'signature to an instrument declared on or set forth as a cause of action . . . shall be taken as admitted unless the party sought to be charged thereby files in court, within the same length of time after such instrument is pleaded as is allowed for an answer, a specific denial of the genuineness thereof and a demand that it shall be proved at the trial.' This provision includes within its scope not only the actual signing of the instrument but also the authority of the signer, and is not complied with by a mere denial of the signature and of the authority of the signer to execute the instrument in behalf of the party for whom he purported to act. *Scholl* v. *Gilman*, 263 Mass. 295, 298, and cases cited. That the signature to the note in suit was the authorized signature of the defendant therefore was admitted." *McDuffee* v. *Kelsey*, 312 Mass. 458, 459–460. See *Boutillier* v. *Wesinger*, 322 Mass. 495, 496. Because not set up as required by c. 231, § 29, this defence is not open to Lido.

The question before us then is the liability of Lido upon a note such as we have here. It is undoubtedly a negotiable instrument and comes within the provisions of G. L. (Ter. Ed.) c. 107. We must first determine what sort of a negotiable instrument it is. The evidence discloses that the plaintiff had at no time any intention to lend Lido any money or thing of value. While the check may have been

made out to Lido, the plaintiff delivered it to Campbell in pursuance of the understanding that it was to be used to consummate the sale from Shea. The plaintiff was fully aware that the check was to be used to pay personal obligations of Campbell and Flanagan and that Lido was to receive no consideration for it. Therefore Lido was an accommodation maker of the note. G. L. (Ter. Ed.) c. 107, § 52.[1]

In these circumstances we are of opinion that it was a question for the jury to determine for whose accommodation Lido signed this note. Was it for the accommodation of the plaintiff or for the accommodation of Campbell and Flanagan? It is plain that Lido would not be liable to a party for whose accommodation it signed. *Fillebrown* v. *Hayward*, 190 Mass. 472. *Goodman* v. *Gaull*, 244 Mass. 528. *Beacon Trust Co.* v. *Barry*, 260 Mass. 449, 451–452. In the case at bar the jury would not be obliged to find that Lido had signed for the accommodation of Campbell and Flanagan rather than for the plaintiff. They could find it more probable that Lido signed at the request of the plaintiff in order that he might be more secure in his loan to Campbell and Flanagan. Because of what hereinbefore appears the jury could find that the plaintiff never made any loan to Campbell and Flanagan. The check the plaintiff gave them was never cashed or deposited by anyone. "On this record it was for the jury to say for whose accommodation the defendant signed." *Leonard* v. *Woodward*, 305 Mass. 332, 334, and cases cited. *United Beef Co.* v. *Childs*, 306 Mass. 187. See *Salem Trust Co.* v. *Deery*, 289 Mass. 431, 435–436.

Lido has pleaded that the making of this note by it was ultra vires. But nowhere is this point argued in its brief and we therefore do not consider it. Rule 13 of the Rules

---

[1] "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder in due course, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. We deem it appropriate to say, however, that if such a defence is set up at a subsequent trial it would be well if some evidence were introduced of the corporate powers of the defendant. See *Bennett* v. *Corporation Finance Co. Inc.* 258 Mass. 306; *New Hampshire National Bank* v. *Garage & Factory Equipment Co.* 267 Mass. 483.

*Exceptions sustained.*